BARRON *v.* TRUPSKI.

1. APPEAL AND ERROR—DIRECTED VERDICT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

On plaintiff's appeal from order granting defendants' motion for directed verdict on ground of plaintiff's contributory negligence in colliding with defendants' unlighted parked truck and trailer at 9 o'clock in the evening, the negligence of defendants is assumed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error, § 945.
[2] 5 Am Jur, Automobiles, §§ 423, 429, 725.

2. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—ASSURED CLEAR DISTANCE AHEAD—SPEED—PROXIMATE CAUSE.

Plaintiff motorist was guilty of contributory negligence as a matter of law, where proximate cause of accident was his failure so to control his car as to be able to stop within the assured clear distance ahead when preceding car pulled to left and plaintiff's car collided with rear of defendant's unlighted truck and trailer parked at curb, as plaintiff was traveling at about 25 miles an hour at 9 o'clock in the evening, late in September and pavement was dry except for oil spots (CL 1948, § 256.305).

Appeal from Oakland; Doty (Frank L.), J. Submitted October 7, 1949. (Docket No. 49, Calendar No. 44,466.) Decided December 7, 1949.

Case by Roy E. Barron against Peter Trupski and another for personal injuries sustained when his automobile ran into defendants' unlighted truck. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*A. Patrick McIntosh* (*George A. Porter,* of counsel), for plaintiff.

*Cary & BeGole,* for defendant.

BOYLES, J. On September 24, 1947, after 9 o'clock at night, plaintiff was driving his automobile north on the right-hand side of John R street in the city of Highland Park, about 2 feet from the east curb. His driving lights were on and he was following about 35 or 40 feet behind another northbound automobile. The automobile ahead pulled to its left toward the center of John R street, "like it was going to make a left turn." This disclosed the presence of an unlighted truck and trailer, owned by the defendant trucking company, parked at the curb by the defendant Trupski. Plaintiff saw the rear end of defendants' trailer without lights or reflector, parked on

the pavement at the right (east) curb of John R street about 35 or 40 feet ahead of him.

Plaintiff was traveling about 25 miles an hour and applied his brakes but he failed to stop before colliding with defendants' trailer, which he claims was due to a slippery condition, oil spots on the pavement. Also, there was a depressed manhole cover in the pavement just north of Grand avenue (about 75 feet from the place of collision), making a hole $3\frac{1}{2}$ inches deep in the asphalt pavement of John R street and plaintiff claims that when his front wheel hit this hole it threw his car wheels over in line with the oil spots on the pavement.

John R street at the point of this accident is a macadam paved highway 36 feet in width, running north through the city of Highland Park, and parking was permitted at the curb. It was a normal dry highway on the night of the accident, in good repair. John R street was illuminated with street lights so the truck and trailer stood almost midway between a street light about 60 feet back of the trailer and one 75 feet ahead of the truck. Plaintiff was driving within 2 feet of the east curb in the space normally used for parking, where there were spots of oil along the highway which were on an average about as big as a man's hand, due to oil drop from parked automobiles. These spots occurred more frequently in that part where parking was allowed than in the more central part of the street. However, the oil condition was no different at the point of the accident than in the block south or other points on John R street. A police officer, plaintiff's witness, testified:

"*Q.* By oil you mean ordinary oil accumulations at this point and any other place where vehicles travel?.

"*A.* I would say so. Like you have in your garage.

"*Q*. It was no different at Grand avenue at the point of this accident than in the block south or any other point on John R street?

"*A*. That's about right. I didn't pay special attention to any other intersection than that but I can agree with you. * * * It would be a situation that is very normal in [*sic*] Pontiac (Highland Park?) I imagine, more oil spots next to the curb where the cars park and less out in the road.

"*Q*. There was nothing abnormal about the condition at this particular point?

"*A*. No, counsel. * * * If there is a light rain this oil accumulation on most highways causes a dangerous condition. There was no rain that night or dampness.

"*Q*. The same condition existed throughout John R street with reference to driving?

"*A*. Yes."

The condition of the street was otherwise normal; it was dry, there was no snow, ice or dampness. Plaintiff had not observed any oil on the pavement or any slipping of the wheels up to the point where he applied the brakes just before the collision.

Plaintiff's automobile was wedged into the rear of the defendants' parked trailer, he was injured and brought suit against the defendant owner of the truck and trailer and the driver.

At the trial, a police officer who examined the situation immediately after the accident, who was sworn as plaintiff's witness, testified on cross-examination as to skid marks, as follows:

"*Q*. Do you recall anything you noticed particularly in reference to skid marks or the absence of skid marks at the point where the automobile hit the rear of the truck?

"*A*. From where this passenger car struck the rear of the number two vehicle, which would be the trailer, the rear wheels of the passenger car had a skid mark of possibly a foot to two feet in length.

"*Q.* That is the only skid mark you could see from the passenger car, a foot or two?

"*A.* All I could find.    *    *    *

"*Q.* At the rear of the automobile there was only a little skid mark of about a foot or two long and that was all you could find by way of skid marks of any kind on the highway, correct?

"*A.* Correct.

"*Q.* Was there any indication of an automobile skidding or trying to stop in this whole 75 feet from that manhole cover up there except those little skid marks?

"*A.* No, sir, that is all: Two skid marks and a smashed up automobile."

The foregoing factual situation was disclosed to a jury by the testimony of the plaintiff and his witnesses in a trial in the circuit court for Oakland county. At the close of the plaintiff's case the defendants moved for a directed verdict on the following ground:

"Under the testimony in this case the plaintiff is guilty of contributory negligence in having violated the provisions of CL 1929, § 4697, as amended,* which requires in part that he shall operate his vehicle in such a manner and at such a speed that he can bring it to a stop within the assured clear distance ahead."

The court granted the motion, stating his reasons as follows:

"One driving a car on the highway must drive no faster nor slower than the condition of the pavement allows and all the circumstances considered, but under no consideration must he drive it at a greater speed than will enable him to bring the car to a stop

---

* CL 1948, § 256.305 (Stat Ann 1947 Cum Supp § 9.1565).—Reporter.

within the assured clear distance ahead. Now, did the defendant stop his car within the assured clear distance ahead? He said he could stop the car in 30 to 35 feet, that he was driving behind another car 30 to 35 feet behind that car, then there loomed up in front of him this truck, which was some distance away. He applied his brakes, so he says, and we must assume he is telling the truth in this case because of this motion. He was unable to stop his car because he said the pavement was slippery on account of oil, hitting a manhole and no lights on the truck and consequently he ran into it. If he had had his car under control this probably wouldn't have happened. He was not able—under the law you have to have lights to show objects 100 feet ahead. He should have been able, or, if he couldn't see 100 feet ahead, he should have driven at such a speed he could stop within the assured clear distance ahead what his lights showed up. He ran into the back of this truck and was damaged.

"There is no question in my mind he is guilty of contributory negligence. The skid marks were only about 1½ or 2 feet long. If he tried to stop his car 30 or 35 feet back, and the testimony disclosed there was a minimum of oil and a minimum of stone, there would have been skid marks further than that, but the chances are, and I think he never saw the truck until within a few feet of it and was not able to bring his car to a stop. Consequently, he is guilty of negligence and cannot recover."

We are in accord. For the purposes of this case the negligence of the defendants in parking an unlighted truck and trailer on the highway in the night-time may be assumed. The negligence of the plaintiff in not having his automobile under such control that he could stop within the assured clear distance ahead when defendants' truck and trailer came into his vision was one of the proximate causes of the ac-

cident.   The judgment of no cause of action is affirmed.

SHARPE, C. J., and BUSHNELL, REID, NORTH, BUTZEL, and CARR, JJ., concurred with BOYLES, J.   DETHMERS, J., concurred in the result.